8 F.3d 1094
 62 USLW 2356, 17 Employee Benefits Cas. 1489,
Pens. Plan Guide P 23886N
 Donna TIEMEYER; Thomas Tiemeyer; Geoffrey Tiemeyer, by
Donna Tiemeyer, his mother and next friend; Zachary
Tiemeyer, by Donna Tiemeyer, his mother and next friend;
Joshua Tiemeyer, by Donna Tiemeyer, his mother and next
friend, Plaintiffs-Appellants (92-3415), Cross-Appellees,
v.
COMMUNITY MUTUAL INSURANCE COMPANY (92-3528); Children's
Hospital Medical Center; The Children's Hospital Medical
Center Blue Cross, Blue Shield, and Major Medical Plan for
Regular Full-Time and Part-Time Employees (92-3529),
Defendants-Appellees, Cross-Appellants.
 Nos. 92-3415, 92-3528 and 92-3529.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 2, 1993.
Decided Nov. 3, 1993.
 
 Mitchell B. Goldberg (briefed), Claudia G. Allen (argued), Strauss & Troy, Philip A. Logan (briefed), Cincinnati, OH, for plaintiffs-appellants cross-appellees in Nos. 92-3415, 92-3528 & 92-3529.
 Frederick M. Erny (argued), Frank C. Woodside, III (briefed), Dinsmore & Shohl, Edward G. Marks (argued and briefed), Beckman, Weil, Shepardson & Faller, Cincinnati, OH, for Community Mut. Ins. Co. in No. 92-3415.
 Frederick M. Erny, Frank C. Woodside, III, Dinsmore & Shohl, Cincinnati, OH, for Childrens Hosp. Medical Center, Children's Hosp. Medical Center Blue Cross, Blue Shield, and Major Medical Plan for Regular Full-Time and Part-Time Employees in Nos. 92-3415, 92-3528 & 92-3529.
 Edward G. Marks (argued and briefed), Beckman, Weil, Shepardson & Faller, Cincinnati, OH, for Community Mut. Ins. Co. in Nos. 92-3528, 92-3529.
 Before: KEITH and KENNEDY, Circuit Judges, and CONTIE, Senior Circuit Judge.
 CONTIE, Senior Circuit Judge.
 
 I.
 
 1
 Plaintiff-appellant cross-appellee Donna Tiemeyer ("Tiemeyer") was an employee of defendant-appellee cross-appellant Children's Hospital Medical Center ("Children's Hospital") on October 13, 1987, when she learned of the possibility of a private adoption of triplets yet to be born. She and her husband immediately contacted an attorney to represent them in securing the children. That same day, Tiemeyer contacted the benefits department at the Children's Hospital to determine the children's eligibility under "The Children's Hospital Medical Center Blue Cross, Blue Shield, and Major Medical Plan for Regular Full-Time and Part-Time Employees" (the "Plan").
 
 
 2
 On December 29, 1987, the male triplets were born at University Hospital in Cincinnati. The boys were two months premature, severely underweight and underdeveloped, and quite ill. Immediately after birth, the children were placed in the critical care unit of University Hospital. Because of their varying weights at birth (ranging from 1 lb. 15 oz., to 2 lbs. 12 oz.) and differing medical problems, the boys progressed at varying rates. Plaintiff-appellant cross-appellee Geoffrey Tiemeyer was discharged from Children's Hospital on March 2, 1988. Plaintiff-appellant cross-appellee Joshua Tiemeyer was discharged on April 23, 1988. Plaintiff-appellant cross-appellee Zachary Tiemeyer was discharged on May 13, 1988.
 
 
 3
 On December 31, 1987, two days after the triplets were born, the Tiemeyers' attorney filed a preplacement application in the Hamilton County Court of Common Pleas, Probate Division. A report on the proposed placement, completed by the Children's Protective Service, was sent to the court on January 4, 1988.
 
 
 4
 On January 15, 1988, the triplets' biological mother filed an Application for Approval of Placement. That same day, the Tiemeyers filed their Petition for Adoption. On the basis of such filings, an Entry Approving Placement was signed and journalized on January 15, 1988, by the Probate Court referee.
 
 
 5
 Tiemeyer applied for dependent coverage under the Plan for the triplets effective as of the date of their placement, January 15, 1988. Defendant-appellee cross-appellant Community Mutual Insurance Company ("Community Mutual"), the Plan's administrator, denied the Tiemeyers' application because it considered the children's "adoption date" to be the date that the children "established residence" with the policyholder. Because the children were not physically removed from the hospital prior to January 15, 1988, Community Mutual concluded that the children had not established residency with the Tiemeyers.
 
 
 6
 On April 11, 1988, the Hamilton County Probate Court conducted a hearing on the Tiemeyers' Petition for Adoption and granted an Interlocutory Order of Adoption. On November 3, 1988, the Hamilton County Probate Court entered its Final Decree of Adoption.
 
 
 7
 Tiemeyer continued to appeal Community Mutual's decision through a series of denials. Meanwhile, University Hospital filed suit against the Tiemeyers in the Hamilton County Court of Common Pleas on December 15, 1989, seeking $289,108.99 plus interest and court costs, for nonpayment of hospital and related medical expenses incurred prior to the children's discharge dates.
 
 
 8
 Plaintiffs-appellants cross-appellees Donna, Thomas, Geoffrey, Zachary and Joshua Tiemeyer (collectively the "appellants" or "Tiemeyers") initiated this action against Community Mutual and the Children's Hospital on July 6, 1990, alleging breach of contract, violation of the Tiemeyers' civil rights, and a claim pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, Title I of which covers any employee benefit plan maintained "by any employer engaged in commerce or in any industry or activity affecting commerce" unless expressly exempted. 29 U.S.C. § 1003(a)(1). Pursuant to 29 U.S.C. § 1132(a)(1)(B), a participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(g)(1) authorizes the court to "allow a reasonable attorney's fee and costs of action to either party."
 
 
 9
 On February 12, 1991, the Tiemeyers amended their complaint to include the Plan as a defendant. On March 6, 1991, Community Mutual, the Children's Hospital, and the Plan moved to strike counts one (breach of contract) and three (violation of civil rights) of the Tiemeyers' First Amended Complaint. On April 23, 1991, the district court granted the motion, leaving only the ERISA cause of action. On October 28, 1991, all parties filed simultaneous motions for summary judgment and a Stipulated Statement of Facts.
 
 
 10
 On April 16, 1992, the district court, 789 F.Supp. 894, granted summary judgment to the Tiemeyers and ordered the payment of benefits, but denied the Tiemeyers' request for attorney fees, costs and prejudgment interest:
 
 
 11
 Community Mutual's decision to deny benefits is based upon the Tiemeyer infants' inability to satisfy an adoption date residency requirement. This requirement consists of a dependent status and a physical presence in the Tiemeyer home:
 
 
 12
 Inasmuch as all three children have been inpatients at Children's since birth and are not primarily dependent upon her for support, it is impossible for them to have established residence with Ms. Tiemeyer prior to the date Ms. Tiemeyer's Petition for Adoption was filed, and such impossibility will continue for as long as the children remain hospitalized.
 
 
 13
 The Community Mutual Appeals Committee upheld this denial on the same ground. Upon a review of the record before the administrator this Court disagrees with the decision to deny benefit coverage.
 
 
 14
 On January 15, 1988, the natural mother consented to give the triplets up for adoption and the Tiemeyers filed the Petition for Adoption. On this date, in accordance with the Ohio Revised Code, the Tiemeyers assumed the responsibility for paying the physician and hospital expenses incurred in connection with the birth of the triplets, physician expenses incurred in connection with prenatal care or confinement, and agency expenses incurred in connection with the adoption. As of January 15, 1988, the triplets were primarily, if not totally, dependent upon the Tiemeyers for support.Under the Plan a participant's unmarried dependent child between 19 and 25 years old, unmarried dependent child who is a full-time student, or dependent disabled child may gain coverage by satisfying a residency requirement. In each of these situations residency is not interpreted as requiring a physical presence in the Plan participant's home. The Defendants contend that this interpretation is justified because there is "a valid distinction to be made in that at one time [these classes of dependent children] actually lived at the subscribers' home prior to leaving."
 
 
 15
 The Defendants' contention that the triplets established residency on their respective hospital discharge dates also conflicts with Ohio law....
 
 
 16
 In order to issue the November 3, 1988, Final Decree of Adoption as to all of the triplets the Probate Division considered January 15, 1988, as the date residency was established. If the Probate Division had construed the discharge dates as establishing residency then Zachary could not have "lived in the adoptive home for at least six months" [as required by Ohio Rev. Code] § 3107.13. The Tiemeyer triplets established residency on January 15, 1988.
 
 
 17
 The administrator's decision to deny benefit coverage is an inconsistent and unreasonable interpretation under the Plan. Upon review of the record before the administrator this Court disagrees with the decision.
 
 
 18
 District Court's April 16, 1992 Order at 899-900 (citations and footnotes omitted) (brackets in original).
 
 
 19
 With respect to the Tiemeyers' claim for attorney fees, costs and prejudgment interest, the district court held:
 
 
 20
 In an ERISA action by a participant, beneficiary or fiduciary it is within the discretion of the trial court to award reasonable attorney fees and costs to either party. 29 U.S.C. § 1132(g)(1). In considering such an award the court should consider
 
 
 21
 (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.
 
 
 22
 The Defendants, no doubt, could satisfy an award of attorney fees. Upon consideration of the record, however, this Court finds that the Defendants did not proceed in bad faith and that both parties advanced meritorious positions. Additionally, subsequent changes in Ohio law mute the deterrent effect of such an award and constrain the Plaintiffs from conferring a common benefit. Ohio Rev.Code § 3923.40. An award of attorney fees and costs is not warranted.
 
 
 23
 "The general rule is that in the absence of a statutory provision the award of prejudgment interest is in the discretion of the court." Upon consideration of the record an award of prejudgment interest is not warranted.
 
 
 24
 District Court's April 16, 1992 Order at 900 (citations omitted).
 
 
 25
 The Tiemeyers timely filed their Notice of Appeal on April 24, 1992 "from the final judgment denying Plaintiffs' request for attorney fees, costs and prejudgment interest entered in this action on the 16th day of April, 1992." Plaintiffs' Notice of Appeal at 1.
 
 
 26
 Defendants-appellees cross-appellants Community Mutual, the Children's Hospital, and the Plan timely filed their Notices of Appeal on May 6, 1992, appealing only that portion of the order granting plaintiffs' motion for summary judgment.
 
 II.
 Standard of Review
 
 27
 Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A district court's grant of summary judgment is reviewed de novo. Pinney Dock & Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). In its review, this court must view the facts and all inferences drawn therefrom in the light most favorable to the nonmoving party. 60 Ivy St. Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir.1987).
 
 
 28
 The moving party has the burden of conclusively showing that no genuine issue of material fact exists. Id. Nevertheless, in the face of a summary judgment motion, the nonmoving party cannot rest on its pleadings but must come forward with some probative evidence to support its claim. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
 
 
 29
 "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986) (emphasis in original). The dispute must be genuine and the facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the nonmoving party. 60 Ivy St. Corp., 822 F.2d at 1435. If the disputed evidence "is merely colorable or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50, 106 S.Ct. at 2510-11 (citations omitted).
 
 District Court's De Novo Review
 
 30
 The district court applied a de novo standard when it reviewed the Plan Administrator's decision to deny coverage to the Tiemeyer boys:
 
 
 31
 Under ERISA, 29 U.S.C. § 1132(a)(1)(B), a plan administrator's benefit determination is "reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 [109 S.Ct. 948, 956, 103 L.Ed.2d 80] (1989). Where the administrator or fiduciary has a clear grant of discretionary authority an arbitrary and capricious standard of review applies. Firestone, 489 U.S. at 115 [109 S.Ct. at 956]....
 
 
 32
 ....
 
 
 33
 The Defendants contend that Community Mutual possesses a grant of discretionary authority because a provision on the "inside cover of the [Summary Plan Description booklet] gives the plan the right and obligation to approve applicants for participation."
 
 
 34
 ....
 
 
 35
 The Defendants also contend that [a] Summary Plan Description booklet provision reserves discretion "to allow the Administrator to make determinations concerning coverage."
 
 
 36
 The latter Summary Plan Description booklet provision grants discretion only as to what types of hospital care or treatment are covered. Neither provision grants Community Mutual or Children's Hospital discretionary authority to determine benefit eligibility or to construe the terms of the Plan. The absence of a clear grant of discretion dictates that a de novo standard of review applies.
 
 
 37
 District Court's April 16, 1992 Order at 898-899 (citations omitted).
 
 
 38
 The defendants-appellees cross-appellants argue (in their cross-appeal) that "[t]he District Court's literal application of [Firestone ] does not comport with clarifying decisions of this Court." Appellees' Brief at 14. We disagree.
 
 
 39
 In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. at 115, 109 S.Ct. at 956. Significantly, the Supreme Court rejected Firestone's claim that the interpretation of the terms of a plan is an inherently discretionary function automatically entitling it to deferential judicial review. See generally Wells v. United States Steel & Carnegie Pension Fund, Inc., 950 F.2d 1244, 1247 (6th Cir.1991) ("[W]here a plan gives an administrator discretion to interpret the plan, the arbitrary and capricious standard still applies."); Anderson v. Great West Life Assurance Co., 942 F.2d 392, 395 (6th Cir.1991) ("[A]bsent a clear grant of discretion, the court should have reviewed Anderson's claim de novo."); Callahan v. Rouge Steel Co., 941 F.2d 456, 459 (6th Cir.1991) (language giving plan administrator final authority to interpret policy confers discretion sufficient to trigger deferential review); Baker v. United Mine Workers of Am. Health & Retirement Funds, 929 F.2d 1140, 1144 (6th Cir.1991) (employing deferential review where plan granted trustee discretionary authority to determine issues concerning eligibility for benefits).
 
 
 40
 The defendants cite to phrases within the Plan that, they believe, grant discretionary authority to the Plan Administrator. The phrases cited use the terms "approved by the Plan," "covered persons," and "coverage" in a number of clauses defining insurance eligibility. The defendants, in effect, maintain that the right to make coverage determinations presupposes discretionary authority. See, e.g., Appellees' Brief at 15 ("In other words, some person or body within the Plan's management obviously has the obligation and discretion to determine whether the eligibility requirements have been met under the Plan's various provisions--including the provision relating to adopted children. Moreover, by necessity, there must be some entity that determines questions of coverage. Unless that entity has the discretion to do so, the 'approval' provision is rendered superfluous.").
 
 
 41
 Because it is a legal question whether an insurance plan grants discretionary authority to a plan administrator, we must analyze the defendants' claim de novo. Though the instant Plan provides Community Mutual with the right to decide coverage questions, the Plan does not grant discretionary authority to Community Mutual. Because the district court properly determined that the Plan does not confer discretionary authority upon Community Mutual to determine coverage and benefit eligibility, we conclude that the district court properly applied a de novo standard of review when reviewing the Plan Administrator's decision to deny coverage to the Tiemeyer children.
 
 Insurance Coverage
 
 42
 The terms of the Plan are set forth in a Booklet prepared by Community Mutual and distributed to Donna Tiemeyer and other Plan participants. The Booklet provides:
 
 
 43
 This booklet is issued according to the terms of the group contract. It describes the health care benefits available to you as part of that group contract.
 
 
 44
 ....
 
 
 45
 We agree to provide the benefits described in this booklet.
 
 
 46
 None of our agents or employees can legally change this booklet or waive any of its provisions. Any change must be approved by one of our executive officers. This approval must be in a rider, endorsement, or amendment, which becomes a part of the group contract.
 
 
 47
 ....
 
 Who is eligible
 
 48
 You may enroll for either individual or family coverage. Individual covers you, the employee, only; family covers you and your eligible dependents. Your spouse and certain children are eligible dependents.
 
 
 49
 Eligible children are your unmarried children who have not reached age 19. Unmarried children between the ages of 19 and 25 are eligible if they reside with you and are your dependents according to Internal Revenue Service rules. Also eligible are children of any age who are disabled by mental retardation or physical handicap before their 25th birthday. To extend eligibility to any age for these disabled children, you must furnish satisfactory proof of that dependency and disability to us within 31 days after the child's 25th birthday.
 
 
 50
 Certain other unmarried children may also be eligible. However, those children are eligible only if they live with you and are dependent upon you. They include nieces, nephews, grandchildren, and children for whom you or your spouse are the legal guardian.
 
 
 51
 Health Care Benefit Program for the Employees of Children's Hospital Medical Center ("Booklet"). The Booklet, in turn, references an underlying instrument, the Group Master Contract between Community Mutual and Children's Hospital, which is silent regarding the issues now before us.
 
 
 52
 Though the Group Master Contract and the Booklet appear unambiguous, Community Mutual referred to an Administrative Manual to determine that the Tiemeyer triplets were not eligible for benefits. This Manual, apparently created by Community Mutual to assist its claim personnel in answering questions about the Plan, consists of internal guidelines which provide (in relevant part):
 
 
 53
 [A]n employee adds a dependent.
 
 
 54
 ....
 
 
 55
 In the case of child adoption, if the application is received:
 
 
 56
 * within 30 days of the adoption, the adoption date becomes effective date of the coverage. The adoption date is the date the child establishes residence with the subscriber or the date the petition for adoption is filed, whichever occurs last.
 
 
 57
 * within 31 to 90 days of the adoption, the coverage becomes effective upon receipt of the application.
 
 
 58
 * more than 90 days after the adoption, the coverage change becomes effective during your group's annual/special reopening.
 
 
 59
 Joint Appendix at 235.
 
 
 60
 According to this provision, the dependent is covered after establishing residency with the subscriber. Pursuant to the Manual, "residency" is a requirement in four instances: (1) adopted children; (2) children between the ages of 19 and 25 ("Unmarried children between the ages of 19 and 25 are eligible if they reside with you and are your dependents according to I.R.S. rules."); (3) full-time students ("Unmarried dependent children who are full-time students and continue to reside with the contract holder are covered until the end of the year in which they reach the limiting age on your group's Master Contract."); and, (4) handicapped children (handicapped children covered unless "no longer resid[ing] with the contract holder").
 
 
 61
 A closer examination of the Administrative Manual reveals that the term residency implies legal residency, not physical presence. See, e.g., Manual at 17 ("If your group has coverage for unmarried dependent children beyond age 19[,] coverage continues on the family contract as long as the child is dependent, has legal residence with the contractholder and is unmarried."). Moreover, the Children's Hospital's benefits administrator admitted that college students that attend college in another city, state or country would be deemed legal residents and would be covered, as would disabled children who are required to be institutionalized, even if they were never brought home from the hospital under the strained reasoning that an "unborn child is already in residence with its mother in utero." Appellees' Brief at 22. Because the Plan uses the terms "residence" and "established residence" in instances which are commonly known to participants to mean legal residence, we see little reason to believe that the meaning would change with regard to adopted children. See generally Egert v. Connecticut Gen. Life Ins. Co., 900 F.2d 1032, 1036 (7th Cir.1990) ("We have held that firms like Connecticut General cannot adopt any guidelines they choose and then rely upon these guidelines with impunity; rather, they may rely only upon those guidelines that reasonably interpret their plans.") (emphasis in original); Reilly v. Blue Cross & Blue Shield United of Wisconsin, 846 F.2d 416 (7th Cir.) (an insurance plan may not grant complete discretion to an internal advisory committee to pick and choose which claims will be reimbursed), cert. denied, 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988). Tiemeyer reasonably believed, pursuant to the Plan's express wording and the reasonable inferences that may be drawn therefrom, that residency would have been established when the boys were placed in her custody and she was responsible for their care.
 
 
 62
 Community Mutual explained its decision in a letter to Tiemeyer which noted: "Inasmuch as all three children have been inpatients at Children's since birth and are not primarily dependent upon her for support, it is impossible for them to have established residence with Ms. Tiemeyer." We do not agree with the appellees' claim. The children were given up by their natural mother, were not wards of the state, and were not dependents of the hospital. As the Tiemeyers noted in their Reply Brief: "Indeed, if the children had not been dependent on the Tiemeyers for support during the period of time between January 15, 1988 and their release from the hospital, there would be no issue for this Court to consider! University Hospital would not have filed suit against the Tiemeyers for the costs incurred in saving the children from death or disability as a result of birth related deficiencies." Appellants' Reply Brief at 12-13. Ohio law dictates that the Tiemeyers, as custodial parents of the triplets, are legally responsible for the boys' health care costs from the date of the adoption petition, January 15, 1988. Though the appellees maintain that the district court misinterpreted the relevant Ohio statutes regarding adoption, the appellees' claim is wholly unavailing.
 
 
 63
 The Group Master Contract between Community Mutual and Children's Hospital does not address the specific issue that we must resolve regarding an adopted child's right to medical coverage. The Booklet simply notes that "[w]e agree to provide the benefits described in this booklet," and concludes that "[e]ligible children are your unmarried children who have not reached age 19." Only Community Mutual's Administrative Manual limits an adopted child's right to medical coverage. Even under the Manual's provisions, however, the district court properly determined that the Tiemeyers met the Plan's eligibility requirements. We therefore affirm the district court's medical coverage determination.
 
 Attorney Fees and Costs
 
 64
 On appeal, the Tiemeyers assert that "[t]he district court abused its discretion by denying attorneys' fees in contravention of the mandates of this court and applicable federal common law." Appellants' Brief at 7.
 
 The relevant statute provides:
 
 65
 In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.
 
 
 66
 29 U.S.C. § 1132(g)(1). When exercising its discretion, a trial court should consider the following factors:
 
 
 67
 (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.
 
 
 68
 Secretary of Dep't of Labor v. King, 775 F.2d 666, 669 (6th Cir.1985) (adopting the analysis advanced by the Tenth Circuit in Eaves v. Penn, 587 F.2d 453 (10th Cir.1978)). Later courts have expounded on 29 U.S.C. § 1132(g)(1) and the five-factor King analysis:
 
 
 69
 We believe that the broad wording of the statute has the effect of repealing the American Rule in ERISA cases and permitting the federal courts to devise a common law of fee-shifting. In doing so, the courts may take into consideration any of the legitimate, relevant purposes for which fee-shifting has been permitted or proposed, including punishing bad faith litigants, providing the plaintiff with complete relief in appropriate cases, preventing the unjust enrichments of those who benefit from successful litigation, or removing deterrents to meritorious litigation by reducing the disparity between the resources available to the parties. The King- Eaves factors, which include many of the traditional reasons for awarding fees, are as good a place as any to begin the development of a common law of fee-shifting under ERISA, even if they do not turn out to be the final word on the subject.
 
 
 70
 Armistead v. Vernitron Corp., 944 F.2d 1287, 1303-04 (6th Cir.1991). We review the denial of attorney fees under 29 U.S.C. § 1132(g)(1) for an abuse of discretion. Sweet v. Consolidated Aluminum Corp., 913 F.2d 268, 271 (6th Cir.1990).
 
 
 71
 Much of the Tiemeyers' argument regarding the award of attorney fees speaks merely to the "equities" involved. See, e.g., Appellants' Brief at 14 ("Unfortunately, if the district court's decision is affirmed, bankruptcy is inevitable, notwithstanding the favorable decision on the merits. How ironic that the legal system, under these circumstances, can provide a substantial recovery for Plaintiffs' creditors, but so insubstantial a recovery to Plaintiffs as to leave them overburdened with legal fees and interest charges, the extent of which puts them in the same insolvent condition as if they did nothing in the first place to contest the issue of medical coverage.").
 
 
 72
 The district court's order reveals that the court carefully examined the facts presented by both sides and determined that the defendants-appellees acted in good faith. Though the district court determined that Community Mutual and Children's Hospital have the financial ability to pay reasonable attorney fees, the district court determined that: subsequent changes in Ohio statutory law obviated the need for a deterrent effect; the revised Ohio statute precluded a common benefit to individuals seeking to adopt children under similar circumstances; and, all parties presented meritorious positions.
 
 
 73
 Because the Tiemeyers failed to demonstrate that the district court abused its discretion by denying the plaintiffs-appellants' request for attorney fees, we affirm the district court's attorney fee determination. See generally Firestone Tire & Rubber Co. v. Neusser, 810 F.2d 550, 557-58 (6th Cir.1987) ("Finally, we conclude that consideration of the parties' relative ability to pay does not justify an award of fees. Although Firestone clearly possesses the ability to pay, this factor alone should not be dispositive when examination of all other relevant factors indicates that fees should not be awarded.").
 
 Prejudgment Interest
 
 74
 On appeal, the Tiemeyers argue that "[i]t is manifest that the district court acted counter to the remedial purpose of ERISA in denying prejudgment interest in this case." Appellants' Brief at 22. Though ERISA does not address the propriety of awarding prejudgment interest, prejudgment interest may be awarded in the discretion of the district court. Bricklayers' Pension Trust Fund v. Taiariol, 671 F.2d 988, 990 (6th Cir.1982). "Awards of prejudgment interest are compensatory, not punitive, and a finding of wrongdoing by the defendant is not a prerequisite to such an award." Drennan v. General Motors Corp., 977 F.2d 246, 253 (6th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 2416, 124 L.Ed.2d 639 (1993).
 
 
 75
 The district court, with little explanation, refused to impose prejudgment interest noting only: "Upon consideration of the record an award of prejudgment interest is not warranted." District Court's April 16, 1992 Order at 900.
 
 
 76
 In Sweet v. Consolidated Aluminum Corp., this court noted:
 
 
 77
 Even assuming arguendo that the Trustee was acting prudently in withholding the pension funds until December of 1985, it cannot be said that this did not confer a benefit on the trustee. Any additional time one gains, rightfully or wrongfully, in not having to submit payment of a sum of money owed another is without doubt a benefit. Moreover, the payee, plaintiff-appellant herein, has been deprived of the benefit of those payments.... "To allow the Fund to retain the interest it earned on funds wrongfully withheld from a beneficiary would be to approve of an unjust enrichment. Further, the relief granted would fall short of making the beneficiary whole because he has been denied the use of money which was his."
 
 
 78
 913 F.2d at 270 (citation omitted). See also Rivera v. Benefit Trust Life Ins. Co., 921 F.2d 692, 697 (7th Cir.1991) ("The ability of defendants to earn interest on funds which should have been expended to pay plaintiffs' medical benefits under the policy would result in the unjust enrichment of defendants. Relieving defendants from the payment of prejudgment interest would create an incentive for insurers to delay payment and would undercompensate victims by forcing them to absorb expenses incurred as a result of the delay.").
 
 
 79
 Because the appellees benefitted from their inaction as the Tiemeyers' debt compounded each year that it remained unpaid, we find that the district court abused its discretion by denying the Tiemeyers' request for prejudgment interest without explanation. Accordingly, we remand the prejudgment interest issue to the district court with instructions to the court to support its determination with factual findings. See Drennan v. General Motors Corp., 977 F.2d at 253 ("Because an award of prejudgment interest is compensatory rather than punitive, the district court should have considered the position of the Class rather than the conduct of GM in arriving at a resolution of this issue. Thus, the denial of prejudgment interest on the damages award is remanded with instructions to support an award or denial of prejudgment interest with findings of fact incorporating its reasons for its decision.").
 
 III.
 
 80
 We AFFIRM the district court's April 16, 1992 order in all respects except for the prejudgment interest claim which we REMAND to the district court for factual findings to support the district court's decision.
 
 
 81
 KENNEDY, Circuit Judge, concurring.
 
 
 82
 Whether the administrator of this Plan has discretionary authority to construe the terms of the Plan and determine eligibility is a close question here. This discretionary authority is purportedly derived from the Summary Plan Description:
 
 
 83
 Subject to the payment of fees, all persons who have
 
 
 84
 * satisfied the eligibility conditions,
 
 
 85
 * applied for coverage, and
 
 
 86
 * have been approved by the Plan
 
 
 87
 are covered by the group contract. Such persons are called covered persons.
 
 
 88
 I believe that the requirement that covered persons be "approved by the Plan" must have some meaning.
 
 
 89
 The majority recognizes that the instant Plan permits Community Mutual the right to decide coverage questions, but holds that that right to decide does not include the grant of discretionary authority. I cannot agree. When the Plan fiduciary has reserved the right to decide coverage issues, it seems to me that is a reservation of fiduciary discretionary authority. Indeed, it is the administrator's discretionary authority to interpret the Plan that created plaintiffs' claim to hospital costs for the children here: The claim is not based upon language of the Plan, rather, it is based upon language found in the Administrative Manual, which contains the administrator's interpretation of the Plan in accordance with what it believed to be its discretionary authority reserved to it under the Plan.[1] The Plan only provides for medical and hospital costs for certain children of the employee. I do not think it is argued that under the Plan, these children became "children of the employee" until the adoption was completed. If they are to be covered from the time the petition for adoption is filed until the adoption occurs, it must be because of the provisions of the Manual. The Manual provides coverage for adopted children as soon as the petition for adoption is filed and residence is with the adopting parent, even though the adoption process is not yet complete.
 
 
 90
 I concur, however, in the majority opinion because I believe that the Plan acted arbitrarily when it concluded that the children here did not reside with the adopting parents after the Ohio Probate Court issued its order acknowledging the placement and petition for adoption. That order placed the children with the adopting parents. The children had to have a residence somewhere. Children ordinarily have the residence of their parents. Here, the legal right to have the children at their residence had been transferred to the adopting parents. These children no longer had the residence of their birth mother. The children would have gone home with the adopting parents at that time except for their fragile condition. It was the intent of the birth mother and the adopting parents that the children's residence be transferred to the adopting parents and the State of Ohio had approved of that transfer of residence. Since infants are unable to have intent, we must look to the intent of those adults who have their care. There was no intent on the part of the birth mother, the adopting parents or the state that the children reside at the hospital. Their continued presence in the hospital was a mere fortuitous result of their low birth weights. The residence requirement was intended to avoid the situation where a child would continue to remain with the birth parent(s) while the adoption was proceeding or where someone might adopt a child in order to provide the child with health care and the child might never reside with the adopting parents. It seems to me arbitrary and capricious under the facts of this case to find, as the administrator of the Plan did, that the children did not reside with the adopting parents until they were taken home from the hospital. Thus, I concur in the result reached by the majority and would also AFFIRM.
 
 
 
 [1]
 As the majority points out, the Manual was apparently created to "assist claim personnel" and "consists of internal guidelines."