**UAW LOCAL 540, et al., Plaintiffs,**

v.

**Lloyd J. BARETZ, et al., Defendants.**

**Nos. 97–76334, 97–76335.**

United States District Court,
E.D. Michigan,
Southern Division.

March 23, 2001.

Michael F. Saggau, UAW International Union Legal Department, Detroit, MI, for United Automobile, Aerospace and Agricultural Workers of America Local 540.

Linda O. Goldberg, Miller, Canfield, Ann Arbor, MI, for Owens Brockway Glass container, Inc.

Daniel G. Wyllie, Timothy K. Carroll, Dykema Gossett, Detroit, MI, Robert J. Trizna, Schuyler, Roche, Chicago, IL, for Lloyd J. Baretz, Beaver Precision Products, Inc., BVR Liquidating, Inc.

Steven A. Roach, Miller, Canfield, Detroit, MI, for Beaver Aerospace and Defense, Inc.

Daniel G. Wyllie, Dykema Gossett, Detroit, MI, Robert J. Trizna, Francis M. Pawlak, Schuyler, Roche, Chicago, IL, for Unitron, Inc.

## ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL DEFENDANT UNITRON'S COMPLIANCE WITH DECEMBER 4, 1998 FINAL JUDGMENT

EDMUNDS, District Judge.

This matter came before the Court on Plaintiffs' Motion to Compel Defendant Unitron's Compliance with December 4, 1998 Judgment (the "December 4 Judgment").

In the December 4 Judgment, Judge Hackett ordered Defendant Unitron ("Unitron") to reinstate lifetime medical and life insurance coverage for Plaintiffs who retired on or after March 31, 1991 and prior to June 1, 1994, and their spouses as provided for in the governing Insurance Agreement ("the Agreement"). Unitron reinstated medical coverage through Blue Cross–Blue Shield of Michigan ("BCBSM") on March 9, 1999.[1] However, Plaintiffs claim that the BCBSM policy fails to provide the coverage set forth in the Agreement, as they now are required to make co-payments and pay deductibles

for certain services and physician services for retirees age 65 and over are not covered. Plaintiffs allege that Unitron is violating the December 4 Judgment by refusing to reimburse them for the medical expenses they incurred prior to Unitron's reinstatement of medical coverage and for the expenses they have incurred since March 9, 1999, as a result of the current BCBSM policy's insufficient coverage. Plaintiffs ask the Court to compel Unitron to pay those expenses. In addition, Plaintiffs request prejudgment interest on the amount Unitron owes.

## I. Facts

Plaintiffs filed suit against Defendants BVR Liquidating, Inc. ("BVR"), Lloyd Baretz and Unitron alleging Defendants' breach of several collective bargaining agreements ("CBAs") in violation of § 301 of the National Labor Relations Management Act ("LRMA"), 29 U.S.C. § 185; 29 U.S.C.A. § 1132 et. seq.[2] The suit arose out of Defendants' closure of its Troy, Michigan production plant on April 7, 1997. When the plant was shut down, Defendants stopped providing benefits to Plaintiffs pursuant to the CBAs.[3] Among those benefits was health insurance coverage for retirees.

On May 5, 1998, Plaintiffs filed a motion for summary judgment asking the court to find that the 1991–1994 Insurance Agreement ("the Agreement") provided retirees with vested lifetime health care benefits

---

**1.** Plaintiffs first had to file an emergency motion asking Judge Hackett to hold Unitron in contempt for failing to reinstate medical coverage pursuant to the December 4 Judgment. *See* Emergency Motion, filed February 24, 1999. Judge Hackett granted Plaintiffs' motion in an order dated March 2, 1999.

**2.** Unitron operated the business until May 31, 1994, when it sold the business to Beaver Precision Parts ("BPP"). On April 7, 1997, BPP sold essentially all its assets and changed its name to BVR Liquidating, Inc. Lloyd Bar-

etz was the president, director, and controlling majority shareholder of BPP. Unitron employed the Plaintiffs whose benefits are at issue in the present motion.

**3.** Three different CBAs are at issue in this lawsuit: (1) a 1988–91 agreement; (2) a 1991–1994 agreement; and, (3) a 1994–1997 agreement. Each CBA incorporates an insurance agreement which summarizes employee and retiree benefits. The 1991–1994 Insurance Agreement is relevant to the pending motion.

and that Unitron breached the Agreement by terminating those benefits. In the December 4 Judgment, Judge Hackett granted Plaintiffs' motion and ordered Unitron to obtain or reinstate medical coverage as required by the Agreement.[4] Defendants appealed Judge Hackett's order and the Sixth Circuit Court of Appeals affirmed, agreeing with the district court that the CBAs provided retirees with vested lifetime health care benefits. *See UAW v. BVR Liquidating, Inc.*, 190 F.3d 768 (6th Cir.1999).

The December 4 Judgment states:

Defendant Unitron is ordered by mandatory permanent injunction to immediately take all action necessary to obtain or reinstate the medical and life insurance coverage (including hospital-surgical-medical, vision, prescription drugs, and hearing) provided for [in] the [sic] Section 9 of the 1991–1994 Insurance Agreement between BPP [sic] and the UAW for the lifetime of retirees who retired on or after March 31, 1991 and prior to June 1, 1994, and the lifetime of the spouses of those retirees.

Section 9 of the Agreement provides that employees who retire on or after July 1, 1988 will continue receiving medical coverage in accordance with Section 6 of the Agreement. *See* Motion Ex. A at 22.

## II. Analysis

### A. Unitron's Obligation to Reimburse Plaintiffs for the Out-of-Pocket Expenses They Incurred Prior to Unitron's Reinstatement of the BCBSM Policy on 3–9–99

Prior to the December 4 Judgment, Plaintiffs requested reimbursement for the out-of-pocket medical expenses they incurred as a result of Defendants' breach of the Agreement. In Plaintiffs' Second Amended Complaint and Jury Demand, filed April 3, 1998, they asked the Court to order Defendants "to pay all amounts determined to be owed under the terms of the collective bargaining agreements." In Plaintiffs' motion for summary judgment against Unitron, filed May 5, 1998, they requested an order requiring Unitron to reinstate health insurance coverage pursuant to the Agreement and to reimburse Plaintiffs "for the cost of covered health care or health care insurance obtained by them after the June 1, 1997 termination of their health care coverage and through the date their coverage is reinstated, upon determination of such amounts."

In the December 4 Judgment, Judge Hackett found Unitron and BPP liable for Plaintiffs' lifetime health insurance coverage and ordered them to reinstate coverage. However, the court did not address Plaintiffs' request for damages against Unitron. Nor did Judge Hackett issue a subsequent written order requiring Unitron to reimburse Plaintiffs for out-of-pocket medical expenses.[5] The Court, therefore, will treat Plaintiffs' request for reimbursement of these expenses as a motion for summary judgment.

In cases alleging violations of the LRMA, courts have held that the purpose of any award "is to make employees whole for the losses suffered." *See Aguinaga v. United Food and Commercial Workers Int'l. Union,* 720 F.Supp. 862, 870 (D.Kan. 1989), *aff'd in part, rev'd on other grounds,* 993 F.2d 1463 (10th Cir.1993)(*citing, Bow-*

---

**4.** In the December 4 Judgment, Judge Hackett also ordered BPP to provide lifetime health care benefits to Plaintiffs who retired after May 31, 1994.

**5.** The court may have overlooked Plaintiffs' request for damages in their motion against Unitron because in Plaintiffs' earlier motion for partial summary judgment against BPP they asked the Court to rule only on the issue of liability pursuant to the LRMA and to reserve any determination of damages pending further discovery.

*en v. United States Postal Service*, 459 U.S. 212, 223, 103 S.Ct. 588, 74 L.Ed.2d 402 (1983)); *see also Westinghouse Elec. Corp. v. Int'l Bhd. of Elec. Workers*, 561 F.2d 521, 523 (4th Cir.1977)(holding that compensatory damages may be awarded when a breach of a bargaining agreement causes monetary loss). A court finding that an employer breached its collective bargaining agreement with its employees should attempt to fashion a remedy that will place the employees in the position they would have attained had the agreement been performed. *See Int'l Bhd. of Elec. Workers v. A–1 Elec. Service, Inc.*, 535 F.2d 1, 3 (10th Cir.1976). As the Tenth Circuit Court stated, "the general rule in breach of contract cases is that the defendant is liable for all damages resulting from the breach that could have been reasonably and fairly contemplated by the parties at the time of execution." *Id.* at 4 (citations omitted). Thus courts have awarded plaintiffs compensation for the loss of their medical benefits if they purchased substitute insurance coverage or incurred out-of-pocket expenses which would have been reimbursed under the collective bargaining agreement. *See, e.g., Aguinaga*, 720 F.Supp. at 875.

▬ Compensatory or punitive damages are not available under § 1132(a)(3) of ERISA. *See Helwig v. Kelsey–Hayes Company*, 907 F.Supp. 253, 256 (E.D.Mich. 1995) (citations omitted). Thus in *Helwig*, where retirees sued their former employer alleging violations of ERISA based on a series of reductions in their health insurance coverage, the Sixth Circuit Court of Appeals granted the employer's motion to strike the retirees' request for "damages in the amount of all sums paid by plaintiffs to maintain [health insurance] coverage plus an amount to compensate plaintiffs

for pain, suffering and emotion distress." *Id.* While legal relief is not available under § 1132(a)(3), an award of traditional equitable relief, including restitution, is appropriate. *See 29 U.S.C.A. § 1132(a)(3); Golden v. Kelsey–Hayes Co.*, 73 F.3d 648, 661 (6th Cir.1996); *see also Howe v. Varity Corp.*, 36 F.3d 746, 755 (8th Cir.1994)(granting award in the nature of restitution to compensate retirees for welfare benefits they were owed under an employee welfare benefits plan), *aff'd* 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). In *Golden,* retirees sued their former employer under ERISA when the employer modified their health care benefits. The Sixth Circuit classified as equitable relief the retirees' request for an award of out-of-pocket expenses incurred in increased deductibles and co-payments as a result of the employer's modification of their health benefits. *See Golden,* 73 F.3d at 661. As the *Golden* Court stated, "[i]t is well-settled that equitable relief includes monetary damages where required to afford complete relief." *Id.*

The Sixth Circuit and Judge Hackett already found Unitron liable for the retirees' lifetime medical benefits and determined that Unitron violated the LRMA and ERISA when it breached the CBA and terminated the retirees' medical benefits in June 1997. Under the LRMA, the retirees are entitled to an award that will compensate them for the out-of-pocket medical expenses that they incurred as a result of losing these benefits. Under ERISA, this award constitutes restitution for the benefits the retirees were entitled to receive under the Agreement but of which they were deprived. Unitron received the retirees' reimbursement requests more than a year ago. *See* Response Ex. A.[6] Therefore, within thirty

**6.** In fact, the retirees submitted some of those requests over two years ago. *See* Response Ex. A.

(30) days of this Order, Unitron must provide Plaintiffs written objections to any reimbursement request and pay any amounts not contested.

## B. Unitron's Obligation to Reimburse Plaintiffs for the Out–of–Pocket Expenses They Incurred Since Unitron's Reinstatement of the BCBSM Policy on 3–9–99

■ The December 4 Judgment requires Unitron "to obtain or reinstate the medical and life insurance coverage ... provided in Section 9 of the 1991–1994 Insurance Agreement." Section 9 states that retirees are entitled to the medical benefits set forth in Section 6 of the Agreement. Plaintiffs claim that the Agreement requires Unitron to provide the retirees, including those age 65 and over, with certain health care coverage at no cost to the retirees. They allege that despite Unitron's reinstatement of coverage, the company continues to violate the Agreement and the December 4 Judgment because the current BCBSM policy requires retirees to make co-payments and pay deductibles and fails to pay physicians' fees for retirees age 65 and over.

To comply with the December 4 Judgment and the Agreement, Plaintiffs argue that Unitron must reimburse the retirees for the medical expenses that are not completely paid for under the current BCBSM policy, but which Unitron is obligated to cover under Section 6 of the Agreement. To support their position, Plaintiffs indicate that prior to June 1997 Unitron reimbursed retirees for their out-of-pocket expenses and Medicare Part B premiums because the health insurance policy that the company then obtained for its retirees also did not cover all of the medical expenses provided for by the Agreement. See Motion Ex. C. Defendants argue that to satisfy the Agreement, and thus the December 4 Judgment, Unitron merely had to reinstate the former BCBSM policy. Unitron's liability for the reimbursement amounts claimed by Plaintiffs therefore depends on the Court's interpretation of the company's obligations under Section 6 of the Agreement.

Although Judge Hackett and the Sixth Circuit ruled that Unitron is obligated to provide retirees with lifetime medical benefits pursuant to the Agreement, neither court was forced to address what costs Unitron is required to pay under the Agreement. The Court, therefore, must interpret the Agreement to determine if Unitron was obligated to pay the expenses for which the retirees seek reimbursement. The Sixth Circuit's decision in *UAW v. Yard–Man*, 716 F.2d 1476 (6th Cir.1983), sets forth the guiding principles for interpreting CBAs.

■ As the *Yard–Man* Court stated, "[t]he enforcement and interpretation of collective bargaining agreements under § 301 [of the LRMA] is governed by substantive federal law." *Yard–Man*, 716 F.2d at 1479 (citations omitted). However, as the Court further stated, "traditional rules for contractual interpretation are applied as long as their application is consistent with federal labor policies." *Id.* To discern the intent of the parties, the *Yard–Man* Court advised:

> [T]he court should first look to the explicit language of the collective bargaining agreement for clear manifestations of intent ... The court should also interpret each provision in question as part of the integrated whole. If possible, each provision should be construed consistently with the entire document and the relative positions and purposes of the parties ... terms must be construed so as to render none nugatory and avoid illusory promises.

*Id.* at 1479–1480 (citations omitted). If the terms of the agreement are ambiguous, the court may then look to extrinsic evi-

dence to determine the parties' intent. *See BVR Liquidating, Inc.,* 190 F.3d at 772 (*citing Yard–Man,* 716 F.2d at 1480).

Section 1A of the Agreement states that the benefits set forth in the Agreement "will be provided at no cost to the Employees or retirees for the term of this Agreement except where the Plan specifically provides otherwise." *See* Motion Ex. A at 1. Section 6 of the Agreement therefore clearly specifies areas where the Plan does not pay medical expenses in full.[7] For instance, Sections 6B, C, and E provide that retirees must pay co-payments for prescription drug benefits, dental benefits, and vision benefits and that they must meet deductibles for dental benefits. And Section 6F(4) provides that any benefits available under other programs, such as Medicare, "shall be coordinated with the benefits provided by the Company's program of insurance." *See* Motion Ex. A at 16–17.

The language of the Agreement indicates that with the exceptions of the above-mentioned areas, Unitron is obligated to provide medical benefits to retirees at no cost to them, regardless of their age. This interpretation is supported by Unitron's practice prior to 1997 of reimbursing retirees for their Medicare Part B premiums and for the medical expenses the retirees incurred because the former BCBSM policy did not cover completely the expenses that Unitron agreed to pay under the Agreement. Therefore, Unitron must reimburse retirees for their out-of-pocket medical expenses, unless the company unilaterally could modify the Agreement.

 The benefits set forth in the Agreement vested in the Plaintiffs at retirement. *See BVR Liquidating Inc.,* 190 F.3d 768 (6th Cir.1999); Order Granting Plaintiffs' Motion for Partial Summary Judgment, J. Hackett, September 29, 1997. Therefore Unitron could not unilaterally modify or terminate those benefits unless its power to do so is an explicit part of the Agreement. *See Helwig v. Kelsey–Hayes Co.,* 93 F.3d 243, 250 (6th Cir.1996) (citations omitted). Where an employer does not reserve the right to modify or terminate benefits, retirees who have vested lifetime benefits can anticipate that those benefits will continue unchanged as long as they remain retirees. *See Yard–Man, Inc.,* 716 F.2d at 1482 (finding that benefits for retirees are in a sense "status" benefits which carry an inference that they continue so long as the beneficiary remains a retiree); *see also, Helwig,* 93 F.3d at 249 (holding that it is reasonable for beneficiaries to believe that benefits would remain unchanged absent a cancellation provision in the summary plan description).

In *Helwig,* retirees sued their former employer claiming that the employer's reduction of their health care benefits several years after their retirement violated ERISA. The retirees claimed that the employer modified the health care package by requiring retirees to pay deductibles and co-payments for services. The retirees argued that under the summary plan descriptions ("SPDs") in effect when they retired, they were not required to pay these expenses.

The *Helwig* Court found that the retirees had a lifetime vested interest in the health care benefits described in the SPDs which were in effect when they retired. *Helwig,* 93 F.3d at 250. The Court held that once the benefits vested, the employer could not modify or terminate them unless the power to do so was an explicit part of the agreement between the parties. *Id.* Finding no modification or termination

---

**7.** Otherwise, as Section 6 of the Agreement provides, the Plan will pay "usual, customary, and reasonable fees" for medical expenses. *See* Motion Ex. A at 12–16.

provision in the SPDs, the Sixth Circuit concluded that the retirees were entitled to the benefits as they were defined at the time of their retirement. As *Helwig* indicates, if Unitron did not reserve the right to modify the medical benefits set forth in the Agreement, Plaintiffs who retired while the Agreement was in effect are entitled to medical benefits as they were then defined.

Neither the CBA nor the Agreement entered into by Unitron and the UAW contain a provision reserving to Unitron the right to unilaterally modify or terminate retirees' vested medical benefits. *See BVR Liquidating*, 190 F.3d at 773 (finding that the CBA in this case provides that the agreement "will continue in full force and effect without change" until the agreed upon expiration date); Order Granting Plaintiffs' Motion for Partial Summary Judgment, J. Hackett, September 29, 1997 at 19. The retirees, therefore, reasonably anticipated that their medical benefits would continue unchanged as long as they remain retirees. Thus Judge Hackett's order that Unitron obtain or reinstate medical coverage as provided for in Section 9 of the Agreement required Unitron not only to reinstate health insurance policies for the retirees, but also to reimburse retirees for expenses that the company is obligated to provide at no cost to the retiree pursuant to Section 6 of the Agreement but which are not paid for by those policies. Within thirty days of receiving the retirees' reimbursement requests for these expenses, Unitron must provide Plaintiffs written objections to any request and pay any amounts not contested.

### C. Prejudgment Interest For Any Reimbursement Owed to Plaintiffs

Prejudgment interest may be awarded in the Court's discretion. *Tiemeyer v. Cmty. Mutual Ins. Co.*, 8 F.3d 1094, 1102 (6th Cir.1993)(*citing Bricklay-*

ers' Pension Trust Fund v. Taiariol, 671 F.2d 988, 990 (6th Cir.1982)). Such awards are deemed to be compensatory, not punitive, and thus the Court need not find wrongdoing by Unitron prior to awarding Plaintiffs prejudgment interest. *Id. (citing Drennan v. General Motors Corp.*, 977 F.2d 246, 253 (6th Cir.1992)). The Sixth Circuit generally awards beneficiaries prejudgment interest on benefits wrongfully withheld because " '[a]ny additional time one gains, rightfully or wrongfully, in not having to submit payment of a sum of money owed another is without a doubt a benefit' " and the beneficiary " '. . . has been deprived of the benefit of those payments.' " *Tiemeyer*, 8 F.3d at 1102 (*quoting Sweet v. Consol. Aluminum Corp.*, 913 F.2d 268, 270 (6th Cir.1990)). The Court of Appeals explains that allowing the defendant ". . . to retain the interest it earned on funds wrongfully withheld from a beneficiary would be to approve of an unjust enrichment." *Id.* And without an award of prejudgment interest "the relief granted would fall short of making the beneficiary whole because he has been denied the use of money which was his." *Id.; see also Detroit Diesel Corp. v. Lane-Smith*, 39 F.Supp.2d 852, 863–64 (E.D.Mich.1999). The Court warns that "[r]elieving defendants from the payment of prejudgment interest would create an incentive for insurers to delay payment and would undercompensate victims by forcing them to absorb expenses incurred as a result of the delay." *Tiemeyer*, 8 F.3d at 1094 (*citing Rivera v. Benefit Trust Life Ins. Co.*, 921 F.2d 692, 697 (7th Cir.1991)(holding that the ability of defendants to earn interest on funds which should have been expended to pay plaintiffs' medical benefits would result in the unjust enrichment of defendants)).

Defendants argue that it would be inequitable to require Unitron to pay prejudgement interest on reimbursement amounts

which they claim are not properly substantiated. Defendants claim that the amounts are not properly substantiated because the expenses claimed in the retirees' affidavits do not correspond to the supporting documentation attached to those affidavits. *See* Motion Ex. D. Defendants present as examples retirees Lemke's and Piechowiak's claimed expenses which are greater than the amounts shown in their documentation and retirees Benfant's and Coallier's claimed expenses which are less than the amounts shown in their documentation.[8]

In their Reply, Plaintiffs provide explanations for any discrepancies between the amounts claimed in the retirees' affidavits and the supporting documentation. *See* Reply Ex. D. Plaintiffs also argue that under ERISA Defendants waived their right to dispute the reimbursement amounts claimed by the retirees. ERISA requires an employer who denies an employee's claim for reimbursement to provide the employee written notice within a reasonable period and in no case later than 90 days after submission of the claim setting forth the specific reasons for the denial. *See 29 U.S.C.A. § 1133(1); 29 C.F.R. 2560.503–1(f)(1) and (g).* Plaintiffs provide evidence to show that the retirees submitted their reimbursement requests to Defendants on December 7, 1998 and December 1999, *see* Reply Ex. A, B, and C, and that Defendants failed to respond.

Plaintiffs established in their Reply that the expenses claimed by the retirees are accurate. Those expenses reflect the retirees' out-of-pocket expenditures for medical coverage from June 1997 to March 1999. Upon receipt of the retirees' reimbursement requests, Unitron also is obligated to reimburse the retirees for the out-of-pocket medical expenses that they incurred since March 1999 as a result of the current BCBSM policy's insufficient coverage. Unitron benefitted by not providing the retirees any medical benefits from June 1997 to March 1999 and incomplete coverage since March 1999. The retirees were forced to incur substantial expenses as a result of Unitron's breach. Therefore this is exactly the scenario where an award of prejudgment interest is appropriate.

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby orders as follows:

Plaintiffs' Motion to Compel Defendant Unitron's Compliance with the December 4, 1998 Final Judgment is GRANTED.

---

8. Defendants provide that Lemke claims $5,083.83, while the documentation totals $4,435.02; Piechowiak claims $2,330.87, while the documentation totals $481.07; Benfant claims $3,659.68, while the documentation totals $7,721.40; and, Coallier claims $8,909.56, while the documentation totals $11,400.31.