James E. PHILLIPS, Plaintiffs,

v.

TEAMSTERS LOCAL 639 EMPLOY-
ERS HEALTH & PENSION
TRUST, et al., Defendant.

No. 5:99–CV–0522.

United States District Court,
N.D. Ohio,
Eastern Division.

Jan. 4, 2000.

John L. Wolfe, Akron, OH, for James E. Phillips, plaintiffs.

Eben O. McNair, Schwarzwald & Rock, George H. Faulkner, Joseph C. Hoffman, Faulkner, Sackett & Muskovitz, Cleveland, OH, Jonathan G. Axelrod, Beins, Axelrod & Kraft, Washington, DC, for defendant.

## MEMORANDUM OF LAW

GWIN, District Judge.

Plaintiff James E. Phillips brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).[1]  With this action,

---

1.  29 U.S.C. § 1132(a)(1)(B) and (3) provide:

(a) Persons empowered to bring a civil action

Plaintiff Phillips says he is entitled to receive additional pension payments from Defendant Teamsters Local 639–Employee Pension Trust ("Local 639 Fund").

Specifically, Phillips argues that the Local 639 Fund must pay him a prorated share of his full monthly pension benefit. Phillips worked for United Parcel Service Co. ("UPS") for 32.5 years. An employee retiring with 32 years of service under the Local 639 Fund is entitled to receive a pension benefit of $3,200 per month. However, Phillips spent only 2.50 years, or 7.69% of his total work time, working for a division of UPS that contributed to the Local 639 Fund. Thus, Phillips seeks $246.08 per month in pension benefits from the Local 639 Fund, an amount reflecting 7.69% of his full monthly pension benefit.

In response, Defendant Local 639 Fund says that it must only pay Phillips an amount based on his contributions to the Fund. The Local 639 Fund says it altered its pension plan in such a manner to change the calculation of partial pension benefits. While such benefits were formerly calculated based on an employee's total service time, benefits are now based, in part, on the total amount of contributions an employee made to the Fund. Under the Local 639 Fund's calculation, Phillips is entitled to receive $9.90 per month.

After reviewing the parties' proposed finding of fact and conclusions of law, the Court finds that Phillips is entitled to a partial pension from the Local 639 Fund of $246.08.

## I. Background

### A. Phillips's Employment History

Plaintiff Phillips is an Ohio resident who, before retirement, had worked for UPS for more than thirty years. Initially, Phillips worked for UPS in the Washington, D.C. area. Teamsters Local Union No. 639 represented UPS workers in the Washington, D.C. area.[2] The contract between UPS and Local 639 required the former to make pension contributions to the Defendant Local 639 Fund.

Phillips worked for UPS in the Washington, D.C. area between November 1964 and September 1967. During this time, UPS made contributions to Defendant Local 639 Fund on behalf of Phillips, giving him 2.50 years of contributory service with the Local 639 Fund.

After September 1967, Phillips left the Washington, D.C. area and moved to Youngstown, Ohio. While in Youngstown, Phillips continued working for UPS. Teamsters Local Union No. 377 ("Local 377") represented Phillips during his tenure with UPS in Youngstown. Local 377 and UPS have been signatories to a series of collective bargaining agreements that required UPS to make pension contributions to the Central States, Southeast and Southwest Areas Pension Fund ("Central States Fund").

Phillips worked for UPS in the Youngstown area from November 1967 to December 1997. Phillips thus earned 30 years of contributory service credit with the Central States Fund.

At the time of his retirement, Phillips had participated in two pension funds, both the Local 639 Fund and the Central States Fund. Both funds are jointly-trusteed, multi-employer pension funds that receive contributions from employers who have

(1) by a participant or beneficiary—...

\*    \*    \*    \*    \*    \*

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

2. The Local 639 Fund is an unincorporated labor organization within the meaning of 29 U.S.C. § 152(5) and 185. It is affiliated with the International Brotherhood of Teamsters, AFL–CIO.

collective bargaining agreements with the Teamsters. ERISA regulates both funds.

### B. Reciprocal Agreement

Because union members frequently shifted between employers, and thus pension funds, the Teamsters sought to insure such union member shifts would not prevent members from receiving full pension benefits. To do this, the Teamsters International Union drafted a "Reciprocal Agreement" for Teamsters's pension funds in the early 1960's.[3] The Reciprocal Agreement protects employees who have contributed to two or more pension funds. It allows qualified employees to receive a partial pension from the funds to which they contributed. The Central States Fund agreed to the Reciprocal Agreement effective January 1, 1965. The Local 639 Fund agreed to the Reciprocal Agreement on or about September 16, 1971.

Signatories to the Reciprocal Agreement agreed to adopt the partial pension policy attached as an exhibit to the Agreement. This policy, adopted nearly verbatim by both the Local 639 Fund and the Central States Fund, sets forth employee eligibility requirements and the formula for calculating partial pension benefits. As to the latter, the policy required that pension benefits be determined by reference to an employee's total contributory service time, providing in pertinent part:

> Section 8. Partial Pension Amount— The amount of the Partial Pension shall be determined as follows:
>
> (a) The amount of the pension to which the employee would be entitled under this Plan taking into account his Combined Service Credit shall be determined, then
>
> (b) The amount of service credit earned with this Plan since January 1, 1955, shall be divided by the total amount of Combined Service Credit

earned by the employee since January 1, 1955, then

> (c) The fraction so determined in (b) shall be multiplied by the pension amount determined in (a) and the result shall be the Partial Pension amount payable by this Plan.

The Reciprocal Agreement further limited the signatories' right to modify the partial pension policy, providing in pertinent part:

> [N]o change shall be made in the provisions of the Article attached as Exhibit A [partial pension policy], either by change of language or by any modification of the Pension Plan which would have the effect of changing the provisions of Exhibit A. It is further agreed that the only way a signatory Pension Fund can terminate the operation of the provisions of Exhibit A is to follow the "termination" provisions of this Reciprocal Agreement set forth in Section 7 hereof.

Under Section 7, the trustees can only cancel the Fund's participation in the Reciprocal Agreement by giving at least ninety days written notice to the Teamsters International Union's president and the director of the Industrial Relations Department of the American Trucking Association. A majority of the Union and Employer Trustees of the trust fund must sign this notice of termination. Local 639 Fund has never cancelled its participation in the Reciprocal Agreement as provided in Section 7.

Although the Local 639 Fund had agreed not to make any modification to its partial pension policy unless it followed the specific procedures set forth in the Agreement, it nonetheless unilaterally changed its partial pension policy in October 1985. Under the amended policy, the amount of

---

**3.** The Reciprocal Agreement described the reasons for its enactment:

> WHEREAS, many employees whose employment has been, is or may be divided among employers obligated to contribute to more than one of the signatory Pension

Funds ... may not qualify for a full pension benefit because their years of covered employment have been or will be divided among various employers and Local Union jurisdictions ....

a partial pension was no longer based on combined contributory service time, but rather on the contributions received, average hourly contribution rates, and credited service earned under the Local 639 Fund.

### C. The UPS Nationwide Strike and Pension Change

In August 1997, the Teamsters struck UPS. In striking, the Teamsters demanded, among other things, that pensions provide $100.00 per month for each year of full-time credited service for those employees who had worked for at least 25 years. On this issue, the strike succeeded. The national UPS agreement required UPS to contribute at sufficient rates to provide for a pension of $3,000.00 per month for 30 years of service with an additional $100.00 per month for each year of employment more than 30, not to exceed $3,500.00 per month. Both the Local 639 Fund and the Central States Fund amended their plans to provide this increased pension benefit.

### D. Phillips's Attempt to Receive Full Pension Benefits

After the changes to UPS's pension plan following the 1997 strike, Phillips was entitled to a monthly pension benefit of $3,200 under either the Local 639 Fund or the Central States Fund. Both funds gave this $3,200 pension after thirty-two years of service. However, because he split his time at UPS between the two pension funds, Phillips had to seek benefits under both funds' partial pension policies.

Phillips first filed for pension benefits with the Central States Fund. Unlike the Local 639 Fund, the Central States Fund had not modified the partial pension policy it adopted under the Reciprocal Agreement. Using the formula provided in that policy, the Central States Fund paid Phillips a monthly pension benefit of $2,953.92. This amount is equal to 92.31% of the $3,200 monthly pension benefit the Central States Fund would have paid Phillips had he spent his entire 32.5 years at a UPS Teamster local that contributed to the Fund. The 7.69% discount reflects that Phillips spent only 30 of his 32.5 years at UPS contributing to the Fund.

Phillips next made application to the Local 639 Fund for the balance of the $3,200.00 monthly pension benefit. However, the Local 639 Fund told Phillips that it had modified its partial pension policy. Under this modified policy, the Local 639 Fund offered to pay Phillips $9.90 per month.

In this action, Phillips says that the Local 639 Fund's modification of its partial pension policy is invalid in that it violates the Reciprocal Agreement. Thus, Phillips asks the Court to award him the amount he would receive under the partial pension policy included in the Reciprocal Agreement. Specifically, Phillips seeks to recover $246.08 per month from the Local 639 Fund, an amount reflecting 7.69% of his full $3,200 monthly pension benefit.

### II. Discussion

### A. Standard of Review

ERISA does not provide a standard for reviewing a plan administrator's interpretation of an ERISA plan's language. Accordingly, courts look to the plan documents to decide the appropriate standard of review.

■ The United States Supreme Court has held that *de novo* review applies in cases where the benefit plan fails, on its face, to clearly give the administrator discretionary authority to decide eligibility for benefits or to construe the terms of the plan. *See Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir.1991) ("[A] trustee's decisions in discharging his duties under a trust instrument are accorded deferential treatment only when the instrument itself grants the trustee discretion ..."). By comparison, the highly deferential arbitrary and capricious standard of review applies where a benefit plan unambiguously grants the administrator discretionary authority to construe the terms of a plan.

■ The United States Court of Appeals for the Sixth Circuit has noted that discretion is the exception rather than the rule. *See Anderson v. Great West Life Assurance Co.*, 942 F.2d 392, 395 (6th Cir. 1991). Thus, while "magic words" are unnecessary to vest discretion in the plan administrator, the Sixth Circuit will apply *de novo* review unless a plan contains "a clear grant of discretion [to the administrator] to determine benefits or interpret the plan." *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir.1994).

■ Moreover, the Sixth Circuit has observed that "discretion is not an all-or-nothing proposition." *Anderson*, 942 F.2d at 395. Thus, a plan may grant discretion to an administrator regarding some decisions but not others. *See id.* Ultimately, the administrator can exercise only the amount of discretion granted in the plan, "no more, and no less." *Id.*

■ Here, the Local 639 Fund claims that the plan gives it discretion in interpreting its pension plan. In support of this argument, the Local 639 Fund points to plan language authorizing the Local Fund 639 Trustees "to provide for the payment of retirement and related benefits to eligible Employees and Beneficiaries in accordance with the terms, provisions and conditions of the Plan of Pension Benefits to be agreed upon by the Trustees ..." and "to construe the provisions of Th[e] Agreement and Declaration of Trust and the Plan of Pension Benefits, and the terms used therein and any rules and regulations issued thereunder."

However, this language does not constitute the required clear grant of discretion. The Sixth Circuit has consistently required more than general authorizing language to establish the discretion required for an arbitrary and capricious standard of review. For instance, in *Wulf v. Quantum Chemical Corp.*, the trust document gave trustees authority to establish rules and provided that "[t]he determination of the Committee as to any disputed questions shall be conclusive." 26 F.3d 1368, 1373 (6th Cir.1994). Still, the Sixth Circuit

found insufficient indication of intent to vest the trustee with discretion. *See id.*

Consider also the Sixth Circuit's decision in *Lake v. Metropolitan Life Ins. Co.*, 73 F.3d 1372 (6th Cir.1996). In *Lake*, the Sixth Circuit determined the appropriate standard of review where the trust documents gave the administrator power to "make all decisions on claims" and vested in the administrator "the management and control of the operation and administration of claim procedures under the Plan...." *Id.* at 1376.

Despite this language, the Sixth Circuit found that the plan did not give the administrator discretion in setting the benefit payments:

> This language does not, however, give Met Life discretion over decisions concerning the level of benefits payable to Plan beneficiaries, a matter of contract interpretation. Cf. *Tiemeyer v. Community Mut. Ins. Co.*, 8 F.3d 1094, 1099 (6th Cir.1993) (plan granted right to make coverage determinations but did not grant authority to interpret provisions of plan), cert. denied, 511 U.S. 1005, 114 S.Ct. 1371, 128 L.Ed.2d 48 (1994).

*Lake*, 73 F.3d at 1376–1377.

Here, the relevant plan documents do not contain a clear grant of discretion to the Local 639 Fund to decide eligibility for benefits or interpret the plan. Most important, the plan documents do not give the Local 639 Fund discretion in setting the amount of pension benefits. Without a clear grant of such discretion, the Court reviews the Local 639 Fund's benefit calculation *de novo*.

### B. Amount of Pension Benefit

In determining the partial pension benefit to which Plaintiff Phillips is entitled, the Court must decide which benefit calculation provision to apply. Defendant Local 639 Fund urges the Court to apply the calculation provision currently included its partial pension policy. Under this provision, Phillips would receive a partial pen-

sion based on the contributions received, average hourly contribution rate, and credited service earned under the Local 639 Fund. In contrast, Phillips asks the Court to apply the calculation provision mandated by the Reciprocal Agreement and included in the Local 639 Fund's partial pension policy before its 1985 amendment. Phillips contends that under this provision he is entitled to a prorated share of his full monthly pension benefit.

■ The Court finds that the benefit calculation provision currently included in the Local 639 Fund's partial pension policy is unenforceable. Specifically, the Local 639 Fund did not follow the required procedures for modifying its partial pension policy when it did so in 1985.

The Reciprocal Agreement expressly requires the Local 639 Fund to provide at least ninety days notice to the Teamsters International Union's president and the director of the Industrial Relations Department of the American Trucking Association before modifying the partial pension policy. The Local 639 Fund did not follow_this requirement when it modified the partial pension policy in 1985.[4]

Nevertheless, the Local 639 Fund argues that it modified the partial pension policy out of fiscal necessity. In particular, the Local 639 Fund says it modified its partial pension policy to reflect changes it made to its general pension plan in 1985. Local 639 Fund says these changes froze the pre–1984 benefit levels, while providing increased benefits for each year of contributory service after 1984. According to the Local 639 Fund, a partial pension policy that determined the benefit amount solely by reference to combined contributory service time "would significantly increase the Local 639 Fund's portion of the participant's partial pension the longer he was way from the Local 639 Fund."

However, the motivations underlying the Local 639 Fund's modification of its partial pension policy are of no moment here.

While the Local 639 Fund may have felt fiscally compelled to alter the partial pension policy, it was not free to do so unilaterally. The Reciprocal Agreement sets forth specific procedures for modifying the partial pension policy. These procedures are not cumbersome. If the Local 639 Fund believes it must alter its partial pension policy, it can do so by following the rather modest requirements of the Reciprocal Agreement.

Because the Local 639 Fund's current partial pension calculation provision is void, the Court applies the calculation provision that preceded the 1985 amendment of the Fund's partial pension policy. This provision, established under the Reciprocal Agreement, requires the Local 639 Fund to award Phillips a prorated share of the pension benefit he would have received if he had spent his entire career at UPS under the Local 639 Fund.

Under the Special Minimum Benefit provision adopted after the 1997 UPS strike, Phillips would have received a pension benefit of $3,200 per month from the Local 639 Fund if he had spent his entire career under the Fund. Having spent only 2.5 years under the Fund, Phillips is entitled to a prorated share of that full pension benefit of $246.08 per month.

Arguing otherwise, Defendant Local 639 Fund says that the Special Minimum Benefit provision is not applicable to employees receiving a partial pension. However, the Local 639 Fund points to no plan language expressly limiting the Special Minimum Benefit provision in such a manner. Moreover, any limitation on the availability of the Special Minimum Benefit provision with regard to employees receiving a partial pension would result in a *de facto* alteration of the partial pension policy. Yet, as noted above, the Reciprocal Agreement requires the Local 639 Fund to follow certain procedures before making any change in its pension plan that would have

---

**4.** Defendant Local 639 Fund does not dispute Plaintiff Phillips's standing to enforce the Reciprocal Agreement.

the effect of modifying the partial pension policy. There is no indication that the Local 639 Fund complied with these requirements in adopting the Special Minimum Benefit provision. Thus, even if the Special Minimum Benefit provision could be construed to exclude employees receiving a partial pension, the exclusionary aspect of the provision would be invalid.

### III. ERISA Violations

Plaintiff Phillips not only argues that the Local 639 Fund's modification of its partial pension policy violated the Reciprocal Agreement, but he also says the modification violated several ERISA provisions. However, having already decided that the modification is void, the Court need not address Phillips's additional claims.

### IV. Conclusion

For the reasons set forth above, the Court finds that Defendant Local 639 Fund must pay Plaintiff Phillips a partial pension benefit in the amount of $246.08 per month. Furthermore, exercising its discretion under 29 U.S.C. § 1132(g)(1), the Court awards Plaintiff Phillips reasonable attorney's fees and the costs associated with this action.

IT IS SO ORDERED.